UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TAFFY D., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. C21-5146-MLP <br><br> ORDER |

## I.   INTRODUCTION

Plaintiff seeks review of the denial of her application for Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred by (1) failing to find Plaintiff's somatic symptom disorder a severe impairment at step two; (2) failing to properly consider Plaintiff's testimony and two doctors' opinions regarding complex regional pain syndrome; and (3) failing to include Plaintiff's use of crutches in the residual functional capacity ("RFC") assessment. (Dkt. # 16.) Plaintiff also contends the case must be remanded because the procedure for removing the Commissioner of Social Security violated the U.S. Constitution's separation of powers, so authority was never properly delegated to the individuals who decided Plaintiff's case, rendering the ALJ's decision invalid. *Id.* As discussed below, the Court REVERSES the

ORDER - 1

Commissioner's final decision and REMANDS the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## II.   BACKGROUND

Plaintiff was born in 1976, has at least a high school education, and has worked as an administrative assistant and fast-food worker. AR at 39–40. Plaintiff applied for benefits on April 12, 2019, alleging disability as of November 22, 2018. *Id.* at 22, 176–79. Plaintiff's application was denied on initial consideration. *Id.* at 98–109. ALJ Cynthia Harmon held a hearing on March 18, 2020, taking testimony from Plaintiff and a vocational expert. *Id.* at 48–97.

On April 7, 2020, the ALJ issued a decision finding Plaintiff not disabled. AR at 22–41. In relevant part, the ALJ found Plaintiff had severe impairments of degenerative disc disease, cervicalgia, chronic pain syndrome, complex regional pain syndrome type I ("CRPS"), and left foot plantar fasciitis. *Id.* at 24. The ALJ found Plaintiff had the RFC to perform light work, except she could stand or walk for four hours in an eight-hour day, and occasionally climb ramps or stairs, stoop, kneel, crouch, crawl, and use foot controls. *Id.* at 28.

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR at 8–10. Plaintiff appealed that final decision to this Court. (Dkt. # 4.)

## III.   LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)

(citations omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id*.

## IV.   DISCUSSION

### A.   The ALJ Erred in Evaluating Plaintiff's CRPS

Plaintiff contends the ALJ erred by failing to properly analyze Plaintiff's CRPS pursuant to Social Security Ruling ("SSR") 03-2p, 2003 WL 22399117 (Oct. 20, 2003). That SSR provides guidance for ALJs in evaluating claims on the basis of CRPS. *Id*. at *1. Under SSR 03-2p, disability claims based on CRPS "are adjudicated using the sequential evaluation process, just as for any other impairment." *Id*. at *6. The ALJ must evaluate Plaintiff's testimony, as well as any medical opinions, to determine the severity of Plaintiff's impairment and assess his or her RFC. *Id*.

As an initial matter, Plaintiff argues SSR 03-2p required the ALJ to seek clarification from Plaintiff's medical providers regarding conflicts in the evidence. SSR 03-2p, in addressing how medical evidence of a CRPS impairment is documented, provides that "conflicting evidence

ORDER - 3

in the medical record is not unusual in cases of [CRPS] due to the transitory nature of its objective findings and the complicated diagnostic process involved." 2003 WL 22399117, at *5. SSR 03-2p then states that "[c]larification of any such conflicts in the medical evidence should be sought first from the individual's treating or other medical sources." *Id.* at *5. Contrary to Plaintiff's assertion, however, this language does not deprive the ALJ of her ability to resolve conflicts in the evidence, nor does it demand evidence the ALJ took specific steps in contacting Plaintiff's medical providers to clarify conflicts in the record. *See Sherbahn v. Astrue*, No. C08-5125-RJB-KLS, 2008 WL 4852838, at *8 (W.D. Wash. Nov. 7, 2008).

Plaintiff more specifically argues the ALJ failed to properly analyze Plaintiff's testimony, and the opinions of Robert Roschmann, M.D., and Belen Amat,[1] M.D., with respect to Plaintiff's claims of CRPS. Plaintiff contends the ALJ did not reference SSR 03-2p in her decision, and did not follow that SSR in evaluating the evidence at issue.

### 1. The ALJ Partially Erred in Discounting Plaintiff's Testimony

Plaintiff testified she suffers from nerve pain all over her body. AR at 69. She testified she has herniated discs in her cervical, thoracic, and lumbar spine. *Id.* She testified she has limited movement in her neck on the left side. *Id.* at 71. She testified she has pain when raising her arms above her head or reaching out in front of her. *Id.* at 72–73. She testified her head hurts when she has to type or do anything with both of her hands at the same time. *Id.* at 86. She testified she cannot bear weight on her left foot. *Id.* at 76. She testified she is unable to walk without crutches, and wears a boot on her left foot when leaving the house. *Id.* at 77, 221. She reported she cannot sit without pain in her back. *Id.* at 216. She testified she has trouble focusing and concentrating because of her pain. *Id.* at 84–85.

---

[1] The ALJ and the parties refer to Dr. Amat as Dr. Amat-Martinez. *See* AR at 36–37. In the medical opinion at issue, Dr. Amat refers to herself as Belen Amat, M.D. *See* AR at 464. The Court therefore identifies her as Dr. Amat.

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). The ALJ must first determine whether the claimant has presented objective medical evidence of an impairment that "could reasonably be expected to produce the pain or other symptoms alleged." *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014). At this stage, the claimant need only show the impairment could reasonably have caused some degree of the symptoms; she does not have to show the impairment could reasonably be expected to cause the severity of symptoms alleged. *Id.* The ALJ found Plaintiff met this step. AR at 29.

If the claimant satisfies the first step, and there is no evidence of malingering, the ALJ may only reject the claimant's testimony "by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet." *Garrison*, 759 F.3d at 1014–15.

Plaintiff has failed to show the ALJ erred in rejecting her testimony regarding the severity of her back, neck, and shoulder symptoms as inconsistent with the medical evidence. *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (citing *Shinseki v. Sanders*, 556 U.S. 396, 407–09 (2009)) (holding the party challenging an administrative decision bears the burden of proving harmful error). "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995)). The ALJ reasonably noted the medical evidence was inconsistent with or contradicted Plaintiff's claims of limitations in those areas. Imaging studies of Plaintiff's spine were largely unremarkable. *See* AR at 268–70, 272, 397–98, 400–02, 538–39. Physical exams showed normal upper extremity and spine range of motion, normal muscle tone, and normal strength. *See, e.g., id.* at 288, 292,

448, 479, 535–36, 545. The ALJ reasonably found this level of functioning was inconsistent with the severity of upper body symptoms Plaintiff claimed.

Plaintiff has shown the ALJ erred, however, in rejecting her testimony regarding the severity of her left leg symptoms as inconsistent with the medical evidence. The ALJ acknowledged Plaintiff had reduced range of motion in her left hip, ankle, and foot on examination. *See* AR at 30, 288–89, 292, 530, 545. The ALJ noted Plaintiff had atrophy in her left lower extremity. *Id.* at 479, 517, 545. The ALJ noted x-rays of Plaintiff's knee, ankle, and foot showed no abnormalities. *Id.* at 31, 263, 396–97, 459. The ALJ did note Plaintiff at times had normal lower extremity strength and sensation, and "her symptoms were out of proportion to examination findings." *Id.* at 31. But that is not inconsistent with CRPS per SSR 03-2p, as objective findings of CRPS are of a "transitory nature" and CRPS pain reports are "typically out of proportion" to the event that caused them. 2003 WL 22399117, at *4–5.

The ALJ similarly erred in rejecting Plaintiff's testimony based on a finding that she improved with treatment. "[T]here can be a great distance between a patient who responds to treatment and one who is able to enter the workforce." *Garrison*, 759 F.3d at 1017 n.23 (internal quotation marks and citation omitted). The evidence to which the ALJ cited noted some improvement in Plaintiff's symptoms, but not to any level of significant control. *See, e.g.*, AR at 369, 417, 476, 653, 714, 721. The ALJ failed to show this evidence was inconsistent with Plaintiff's testimony.

The ALJ also erred in rejecting Plaintiff's testimony based on her daily activities. First, the ALJ reasoned Plaintiff's "allegedly limited daily activities cannot be objectively verified with any reasonable degree of certainty." AR at 35. This is neither a clear nor convincing reason to reject Plaintiff's symptom testimony. *See McKim v. Astrue*, No. 11-cv-5815-RBL-JRC, 2012 WL

ORDER - 6

5250096, at *4 (W.D. Wash. Sept. 4, 2012) (finding the ALJ erred in rejecting the claimant's testimony based on the reasoning that her "allegedly limited daily activities cannot be objectively verified with any reasonably degree of certainty"). A claimant's testimony about her daily activities will rarely be "objectively" verifiable, and such a blanket statement is not convincing as to why this particular claimant's testimony should be rejected.

Second, the ALJ reasoned it was "difficult to attribute [the degree of limitation Plaintiff alleged] to [her] medical condition, as opposed to other reasons, in view of the relatively weak medical evidence and other factors discussed in this decision." AR at 35. This is not a reason standing on its own, but essentially a reiteration of the ALJ's first reason for rejecting Plaintiff's testimony, namely, inconsistency with the medical evidence.

Third, the ALJ reasoned Plaintiff at times reported greater daily activities than she did at other times. AR at 35. But the ALJ's discussion does not describe a noticeable difference in Plaintiff's activity level among her reports in the record. *See id.* at 34–35. And even the activities the ALJ found to be "greater" were not so significant as to contradict Plaintiff's testimony. "[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).

In sum, the ALJ partially erred in rejecting Plaintiff's testimony regarding the severity of her symptoms. The ALJ reasonably concluded Plaintiff's testimony regarding the severity of her neck, back and shoulder symptoms was inconsistent with the medical evidence. The ALJ erred in concluding Plaintiff's testimony regarding the severity of her left lower extremity symptoms was

ORDER - 7

inconsistent with the medical evidence, inconsistent with evidence of improvement, and inconsistent with Plaintiff's activities of daily living.

### 2.   *The ALJ Erred in Rejecting Dr. Roschmann's Opinions*

Dr. Roschmann reviewed Plaintiff's claims as part of the SSA's initial review. AR at 103–07. Among other things, Dr. Roschmann opined Plaintiff medically required a hand-held assistive device for walking. *Id.* at 105.

The ALJ rejected Dr. Roschmann's opinions. AR at 36. The ALJ reasoned Dr. Roschmann "did not have the opportunity to examine the claimant, to review the medical evidence of record in its entirety, or to listen to the testimony of the claimant." *Id.* The ALJ further reasoned Dr. Roschmann's opinion that Plaintiff needed an ambulatory assistive device was inconsistent with the overall medical record. *Id.*

The Commissioner issued new regulations applicable to claims filed after March 27, 2017, which revised the way in which ALJs are to evaluate medical opinions. *See* 20 C.F.R. § 404.1520c. Those new regulations require the ALJ to explain with specificity how he or she considered the supportability and consistency of each medical opinion. 20 C.F.R. § 404.1520c(a)–(b). That explanation must be legitimate, as the Court will not affirm a decision that is based on legal error or not supported by substantial evidence. *See Trevizo*, 871 F.3d at 674. Thus, the regulations require the ALJ to provide specific and legitimate reasons to reject a doctor's opinions. *See also Kathleen G. v. Comm'r of Soc. Sec.*, No. C20-461 RSM, 2020 WL 6581012, at *3 (W.D. Wash. Nov. 10, 2020) (finding that the new regulations do not clearly supersede the "specific and legitimate" standard because the "specific and legitimate" standard refers not to how an *ALJ* should weigh or evaluate opinions, but rather the standard by which the

ORDER - 8

*Court* evaluates whether the ALJ has reasonably articulated his or her consideration of the evidence).

The ALJ erred in rejecting Dr. Roschmann's opinions. First, the ALJ's statement that Dr. Roschmann did not have the opportunity to examine Plaintiff, review all of the medical evidence, or listen to Plaintiff's testimony provides no specificity as to the ALJ's reasoning. The ALJ did not identify specific evidence or findings that would have changed Dr. Roschmann's opinions. Second, the evidence the ALJ did cite as contradicting Dr. Roschmann's opinions was consistent with CRPS. As discussed above, conflicts in the medical record are not unexpected with CRPS, and Plaintiff had some normal and some abnormal left lower extremity findings. *See supra* Part IV.A.1. Moreover, the record regularly documents Plaintiff using crutches and/or a walking boot. *See, e.g.*, AR at 288, 728, 732–33, 735, 737–39, 741, 744, 747. The ALJ noted several records that did not mention whether Plaintiff was using crutches, but that is not substantial evidence to show she did not need them, particularly in light of the numerous records and opinions indicating Plaintiff needed an ambulatory aid. The ALJ thus failed to provide valid reasons for rejecting Dr. Roschmann's opinions, and harmfully erred.

        3.    *The ALJ Erred in Rejecting Dr. Amat's Opinions*

Dr. Amat completed a physical RFC questionnaire on November 22, 2019. AR at 463–64. Dr. Amat opined Plaintiff could sit and stand/walk for less than two hours each. *Id.* at 463. Dr. Amat opined Plaintiff would need a job that permits shifting positions at will from sitting, standing, or walking, and would need to take unscheduled breaks during an eight-hour workday. *Id.* Dr. Amat opined Plaintiff needed crutches when standing/walking, could lift less than 10 pounds, could rarely twist, stoop, and climb stairs, and could never crouch/squat or climb

ORDER - 9

ladders. *Id.* at 463–64. Dr. Amat opined Plaintiff would miss more than four days of work per month due to her impairments or treatment. *Id.* at 464.

The ALJ rejected Dr. Amat's opinions because they were not well supported by her own examination findings, and not consistent with the overall medical evidence. AR at 36–37. Both reasons fail. Dr. Amat documented tenderness in Plaintiff's left foot, leg, and low back, and moderately decreased range of motion in Plaintiff's left ankle. *See id.* at 526, 530. Although she found Plaintiff's tenderness to be out of proportion to her exam findings, that is consistent with CRPS. *See* SSR 03-2p, 2003 WL 22399117, at *5. And, as explained with respect to Plaintiff's testimony and Dr. Roschmann's opinions, the overall medical evidence is not inconsistent with limitations in Plaintiff's left lower extremity. *See supra* Part IV.A.1–2. The ALJ therefore did not provide valid reasons for rejecting Dr. Amat's opinions, and harmfully erred.

### B. The ALJ Harmfully Erred at Step Two in Evaluating Somatic Symptom Disorder

Plaintiff contends the ALJ erred at step two by failing to find that Plaintiff had a severe impairment of somatic symptom disorder. The ALJ noted Plaintiff was diagnosed with somatic symptom disorder, but found it was not a severe impairment. AR at 25–26. The ALJ reasoned the record generally showed normal mental status findings, and Plaintiff received conservative treatment, from which she reported improvement. *Id.*

The step-two inquiry is "merely a threshold determination meant to screen out weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146–47 (1987)). At step two, the ALJ must determine if the claimant suffers from any impairments that are "severe." 20 C.F.R. § 404.1520(c). "An impairment or combination of impairments may be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's work." *Webb v. Barnhart*, 433 F.3d 683,

ORDER - 10

686–87 (9th Cir. 2005) (internal quotation marks and citations omitted). As long as the claimant has at least one severe impairment, the disability inquiry moves on to step three. *See* 20 C.F.R. § 404.1520(d).

The ALJ here analyzed all of Plaintiff's mental health diagnoses—somatic symptom disorder, major depressive disorder, and unspecified anxiety disorder—together. *See* AR at 25–27. In doing so, though, the ALJ failed to adequately address somatic symptom disorder. Somatic symptom disorders "are characterized by physical symptoms or deficits that are not intentionally produced or feigned, and that, following clinical investigation, cannot be fully explained by a general medical condition, another mental disorder, the direct effects of a substance, or a culturally sanctioned behavior or experience." 20 C.F.R. § 404, Subpart P, App'x 1, 12.00B(6)(a). "Symptoms and signs may include, but are not limited to, pain and other abnormalities of sensation, gastrointestinal symptoms, fatigue, a high level of anxiety about personal health status, abnormal motor movement, pseudoseizures, and pseudoneurological symptoms, such as blindness and deafness." *Id.*

The ALJ's discussion at step two did not address these symptoms. Rather, the ALJ noted, for example, that there was "no evidence of ongoing suicidal ideation, homicidal ideation, psychosis, panic attacks, or other severe symptomatology." AR at 25. The ALJ noted Plaintiff had "good insight, judgment, thought processes, and thought content with unremarkable eye contact." *Id.* These findings may support a finding that major depressive disorder and anxiety disorder are not severe, but they do not address whether somatic symptom disorder is severe.

The ALJ further reasoned Plaintiff received only conservative treatment and improved with medication and past therapy. AR at 25–26. As the ALJ noted, Plaintiff saw a psychologist to treat her pain starting in November 2019. *Id.* at 25. That she did not have any inpatient

ORDER - 11

treatment, though, does not indicate her symptoms were controlled by conservative treatment. *See id.* And Plaintiff's reports that her mental health—primarily depression—improved with medication and past therapy do not establish that her somatic symptom disorder had no more than a minimal effect on her work. *See id.* at 26, 749. The ALJ thus erred in failing to properly consider whether Plaintiff's somatic symptom disorder was a severe impairment at step two.

Given the potential interplay between somatic symptom disorder and CRPS, the Court cannot confidently conclude the outcome would have been the same had the ALJ properly analyzed somatic symptom disorder. The ALJ thus harmfully erred at step two. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006) ("[A] reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the [improperly rejected evidence], could have reached a different disability determination.").

C.  **The ALJ Erred by Failing to Properly Address Plaintiff's Use of Crutches in the RFC**

Plaintiff contends the ALJ erred by failing to include a need for crutches in the RFC. Because the Court has found that the ALJ erred by rejecting Dr. Roschmann's opinion that Plaintiff needed an assistive device to ambulate, the ALJ erred in formulating the RFC. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1040–41 (9th Cir. 2007) (holding ALJ's RFC assessment and step five determination were not supported by substantial evidence where the RFC and hypotheticals to the vocational expert failed to include all the claimant's impairments).

D.  **The Court Does Not Address Plaintiff's Separation of Powers Argument**

Plaintiff contends this case must be remanded because the structure for removing the Commissioner of Social Security violated the separation of powers under Article II of the U.S. Constitution, such that the Social Security Administration's decision to deny Plaintiff benefits

was made by individuals who had not properly been delegated authority to make such decisions. The Court declines to reach this issue because this case can be resolved on Plaintiff's other claims of error, and based on the principle of constitutional avoidance. *See Copeland v. Ryan*, 852 F.3d 900, 905 (9th Cir. 2017) (declining to address claim of error based on constitutional grounds where case could be resolved on another ground).

### E. Scope of Remand

Plaintiff asks the Court to remand this matter for further administrative proceedings. Except in rare circumstances, the appropriate remedy for an erroneous denial of benefits is remand for further proceedings. *See Leon v. Berryhill*, 880 F.3d 1041, 1043 (9th Cir. 2017) (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir. 2014)). The Court agrees remand for further proceedings is the appropriate remedy here.

On remand, the ALJ shall reevaluate Plaintiff's somatic symptom disorder at step two. The ALJ shall reevaluate Plaintiff's testimony regarding her left lower extremity symptoms, Dr. Roschmann's opinions, and Dr. Amat's opinions. The ALJ shall reassess Plaintiff's RFC, including any need for crutches shown by the evidence. The ALJ shall reassess all relevant steps of the disability evaluation process, and conduct all further proceedings necessary to reevaluate the disability determination in light of this Order.

///
///
///
///

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is REVERSED, and this case is REMANDED for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

Dated this 27th day of October, 2021.

MICHELLE L. PETERSON
United States Magistrate Judge